*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0491p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BARBRASUE BEATTIE and JAMES SOVIS,
                    *Plaintiffs-Appellees*,

                    *v.*

CENTURYTEL, INC.,

                    *Defendant-Appellant*.

No. 06-1565

>

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 02-10277—David M. Lawson, District Judge.

Argued: September 18, 2007

Decided and Filed: December 18, 2007

Before: COLE and COOK, Circuit Judges; FROST, District Judge.[*]

---

## COUNSEL

**ARGUED:** David J. Houston, DICKINSON WRIGHT, Lansing, Michigan, for Appellant. Elwood S. Simon, ELWOOD S. SIMON & ASSOCIATES, Birmingham, Michigan, for Appellees. **ON BRIEF:** David J. Houston, Jeffery V. Stuckey, Scott R. Knapp, DICKINSON WRIGHT, Lansing, Michigan, for Appellant. Elwood S. Simon, ELWOOD S. SIMON & ASSOCIATES, Birmingham, Michigan, for Appellees.

---

## OPINION

---

    R. GUY COLE, JR., Circuit Judge. Plaintiffs-Appellees brought this suit in federal district court, alleging that Defendant-Appellant CenturyTel, Inc. ("CenturyTel") violated federal and state law by using deceptive billing practices to bill customers for WireWatch, a wire maintenance program. Plaintiffs-Appellees brought suit under the Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, the Federal Communications Commission's Truth-in-Billing Act, 47 C.F.R. § 64.2400 *et seq.*, and the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* Plaintiffs-Appellees moved the district court for class certification and for judgment on the pleadings on Count I of the Complaint, which alleged that CenturyTel engaged in unjust and unreasonable billing practices in violation of 47 U.S.C. § 201(b) and 47 C.F.R. § 64.2401. The district court certified Plaintiffs-Appellees' claims and granted Plaintiffs-Appellees judgment on the pleadings

---

[*] The Honorable Gregory L. Frost, United States District Judge for the Southern District of Ohio, sitting by designation.

as to Count I.  CenturyTel appeals only the district court's decision to certify the class.  For the reasons discussed below, we **AFFIRM** the district court's order to certify the Plaintiffs-Appellees' class on its federal-law claims under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). We further remand the state-law claims to the district court to conduct a Rule 23 analysis.

## I.

### A. Factual Background

CenturyTel is a telecommunications service provider.  As the eighth largest telephone company in the United States, CenturyTel provides telephone services to more than 1.7 million customers in twenty-two states, including Michigan.  CenturyTel offers its customers a service entitled "WireWatch," an "inside wire maintenance plan," described by the company as follows:

> WireWatch covers the cost of diagnosis and repair of inside wiring and/or jack damages that can interrupt your phone service.  Once your telephone wiring enters your house, it becomes your responsibility to maintain it and typical repairs can be costly.  For a low monthly fee, enjoy the convenience and satisfaction of having a certified CenturyTel Tech to diagnose and make any necessary repairs.

(JA 17; Compl. ¶ 19.)

WireWatch is an unregulated service, and therefore is not covered by CenturyTel's tariffs or rate filings.  (JA 17; Compl. ¶ 20.)  CenturyTel does not require its customers to subscribe to WireWatch as a condition to obtaining or keeping the company's "tariffed telephone and transmission services."  (*Id.*)  As the district court pointed out, WireWatch varies from state to state: "In some states, CenturyTel has offered WireWatch for a number of years, but in others, such as Alabama and Missouri, WireWatch only recently has become available through CenturyTel to its customers."  *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 163 (E.D. Mich. 2006).

Plaintiffs-Appellees allege that CenturyTel began billing customers for WireWatch as early as 1994.  (JA 18; Compl. ¶ 22.)  From 1994 until 2001, the price of WireWatch gradually increased, starting from as little as $0.50 per month in 1994, increasing to $0.99 per month in 1999, and capping off at $3.95 per month in 2001.  (JA 19; Compl. ¶ 23.)  Until January 2002, CenturyTel billed customers for WireWatch using the description "Non-Regulated Services" under a section of its bill titled "Monthly Service Detail."  (JA 18-19; Compl ¶ 22-23.)  In or around January 2002, CenturyTel reorganized its telephone bills, changing the description used to bill customers for WireWatch from "Non-Regulated Services" to "Inside Wire Maintenance Plan."  (JA 19; Compl. ¶ 24.)  CenturyTel also changed the heading under which it billed for WireWatch to reflect "that these charges were for 'Other Services or Equipment,' and not for transmission services."  (*Id.*)  It was this change, the Plaintiffs-Appellees allege, which triggered complaints from customers who were unaware that they were being billed for WireWatch.  (Appellee's Br. 11; JA 19; Compl. ¶ 25 ("Numerous customer complaints have been lodged against CenturyTel since January 2002, when CenturyTel first revealed that . . . it had been systematically billing and charging customers for . . . [WireWatch].").)

CenturyTel explains that historically customers have enrolled in WireWatch via oral communications with a customer service representative, such as when a customer calls to set up service, or to add or change their existing service.  (Appellant's Br. 8.)  According to CenturyTel, it is during these calls that a CenturyTel representative will inform customers of the benefits and costs of WireWatch.  (*Id.*)  CenturyTel maintains that it "does not utilize a script with regard to these oral communications concerning WireWatch."  (*Id.*)

Plaintiffs-Appellees, however, allege that "CenturyTel has routinely and systematically charged customers for its optional inside wire maintenance program by 'cramming' charges onto customers' telephone bills." (JA 17-18; Compl. ¶ 20.) The Federal Communications Commission ("FCC") defines cramming as "the practice of placing unauthorized, misleading, or deceptive charges on [a customer's] telephone bill. Entities that fraudulently cram people appear to rely largely on confusing telephone bills in order to mislead consumers into paying for services that they did not authorize or receive." (JA 12; Compl. ¶ 2.) The complaint alleges that "[w]hile CenturyTel has never provided Plaintiffs or other customers with an application form or other materials describing the supposed terms and obligations of CenturyTel's inside wire maintenance program, CenturyTel has continuously billed customers for this service each month for at least the last several years." (*Id.*)

## B. Procedural History

The named Plaintiffs are two individual, residential customers of CenturyTel, each of whom reside in Michigan. (JA 13-14; Compl. ¶ 8.) The complaint alleges that plaintiff Barbrasue Beattie paid for WireWatch, unbeknownst to her, from November 1996 until January 2002, when CenturyTel's change to its billing statements alerted Beattie to this unauthorized charge. (*Id.*) Beattie contacted CenturyTel and asked for a refund of the charges. (*Id.*) Although CenturyTel admitted, in a March 29, 2002 letter, that no authorization for WireWatch was on file for Beattie's account, the company refused to credit Beattie for the charges paid prior to May 2001. (*Id.*) Like Beattie, plaintiff James Sovis unknowingly paid for WireWatch from 1994 until January 2002. (JA 14; Compl. ¶ 9.)

On October 28, 2002, Plaintiff-Appellees brought suit in federal district court, pleading six counts: (1) CenturyTel engaged in misleading or deceptive billing practices in violation of 47 U.S.C. §§ 201(b), 206, and 207 (Count I); (2) CenturyTel's unjust and unreasonable practices constitute cramming in violation of 47 U.S.C. §§ 201(b), 206, and 207 (Count II); (3) Under 47 U.S.C. § 401, Plaintiffs-Appellees seek (a) a declaratory judgment that CenturyTel violated 47 U.S.C. § 201(b) and the FCC's Truth-in-Billing Act, 47 C.F.R. § 64.2401, and (b) an injunction barring CenturyTel from continuing to violate these laws and regulations (Count III); (4) CenturyTel breached its contract with Plaintiffs-Appellees and breached its corresponding duties of good faith and fair dealing by engaging in unjust and deceptive billing and cramming practices in violation of state law (Count IV); (5) CenturyTel's unlawful, unconscionable, and deceptive practices have led to its unjust enrichment, and the company should be forced to disgorge any of the charges, monies, and fees that it derived from its unlawful and deceptive billing practices (Count V); and (6) CenturyTel's unlawful billing practices violated the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* (Count VI). (JA 21-26; Compl. ¶ 29-49.)

Plaintiffs-Appellees brought this action on behalf of themselves and a putative class under Rule 23 of the Federal Rules of Civil Procedure. The parameters of the class were defined as follows:

> [A]ll persons who have paid CenturyTel, Inc. for charges described in CenturyTel's residential telephone bills as "Non-Regulated Services" or "Inside Wire Maint. Plan" during the fullest period allowed by law (the "Class").

> Excluded from the Class are CenturyTel; its subsidiaries, affiliates, officers and directors; any entity in which CenturyTel has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded party.

(JA 15; Compl. ¶ 11.) On August 15, 2003, Plaintiffs-Appellees moved to certify the class. Plaintiffs-Appellees also moved for judgment on the pleadings as to Count I of their complaint under

Federal Rule of Civil Procedure 12(c).  On March 10, 2006, the district court certified the class, concluding that the Plaintiffs-Appellees had "satisfied all the prerequisites under Rule 23(a)," *Beattie*, 234 F.R.D. at 169, and had "satisfied the requirements for certification . . . under Rule 23(b)(3)." *Id.* at 171.  The district court also granted the Plaintiffs-Appellees' motion for judgment on the pleadings as to Count I.  *Id.* at 173 ("Based on the allegations and admissions in the pleadings, the Court concludes that the defendant's practice of billing for its WireWatch program using the description 'Non-regulated Services' constitutes a violation of section 201(b) of the Telecommunications Act as a matter of law.").

CenturyTel filed this timely appeal.

## II.

### A. Standard of Review

This Court permits interlocutory appeals of a district court's order to certify a class, Fed. R. Civ. P. 23(f), and reviews such orders for an abuse of discretion, *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).  "The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation."  *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 643 (6th Cir. 2006) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)); *but see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (explaining that "a district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23").  "The district court's decision certifying the class is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion."  *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (internal quotation marks omitted).  A district court abuses its discretion "when [it] relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Reeb*, 435 F.3d at 644.

### B. Merits

1.      *Class Certification*

It is the plaintiff's burden "to establish his right" to class certification.  *Alkire*, 330 F.3d at 820 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).  Under Federal Rule of Civil Procedure 23(a), there are four prerequisites to a class action:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In *Alkire*, this Court explained that "the class may only be certified if, 'after a rigorous analysis,' the district court is satisfied that these prerequisites have been met."  330 F.3d at 820 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

In addition to the prerequisites of Rule 23(a), a plaintiff must also show that her suit falls within one of the three types of class actions under Federal Rule of Civil Procedure 23(b).  Here, the Plaintiffs-Appellees sought, and the district court granted, class certification under Rule 23(b)(3), which requires the district court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  Lastly, Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit. *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006).

   2.     *Rule 23(a)*

        (a)     *Rule 23(a)(3): Typicality*

CenturyTel challenges the district court's conclusion that the Plaintiffs-Appellees have satisfied the typicality requirement of Rule 23(a)(3) because "the resolution of the named Plaintiffs' claims depends upon facts unique to them, and would not prove that other members of the class were misled, crammed or injured." (Appellant's Br. 52.)  Conversely, Plaintiffs-Appellees contend that the typicality requirement is satisfied here because "the claims of Plaintiffs and all Class members arise from the same practice (unlawful billing), that affected them in the same manner (all received and paid bills that unlawfully described the Plan as 'Non-Regulated Service'), and are based on the same legal theory (violation of 47 U.S.C. § 201(b) and 47 C.F.R. § 64.2401)." (Appellee's Br. 55.)

The district court concluded that the typicality requirement was satisfied, explaining that the key issue is "whether the billing language cited by the plaintiffs satisfies the requirements of the statute and regulation." *Beattie*, 234 F.R.D. at 169.  The court explained that CenturyTel's argument, "that a myriad of legal and factual issues exist between the class representative and the putative class members," "confounds the matters of liability and damages." *Id.*

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  In *Sprague*, the Court explained that "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." 133 F.3d at 399 (citing *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082). On the other hand, the *Sprague* Court explained, the typicality requirement is not satisfied when a plaintiff can prove his own claim but not "necessarily have proved anybody's else's claim." *Id.*  Lastly, for the district court to conclude that the typicality requirement is satisfied, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976).

In *Daffin*, for instance, this Court concluded that the typicality requirement was satisfied because the plaintiff's claim–"that Ford breached its express warranty by providing vehicles with defectively designed throttle body assemblies"–involved "the same defective throttle body assembly as the other class members." 458 F.3d at 552.  The Court found the lead plaintiffs' claims to be typical "despite the different factual circumstances regarding the manifestation of the accelerator sticking and Ford's attempts to remedy manifested sticking." *Id.* at 553 (noting that "[t]he mere fact that Daffin's throttle assembly stuck, while other class members' throttles have not stuck, does not render Daffin atypical"). Although Ford argued that "an owner who has not experienced accelerator sticking and has not sought repair for the problem cannot 'prove' an express warranty claim," this Court explained that a district court should not inquire into the merits of the suit in assessing typicality. *Id.* Similarly, the Plaintiffs-Appellees' claim that CenturyTel violated §§ 201 and 206 by billing for WireWatch under a misleading description is typical of the claims of the class members.  The mere fact that some class members may have enrolled in WireWatch after receiving a billing statement with the misleading description does not make the Plaintiffs-Appellees' claims atypical.

Plaintiffs-Appellees' claims arise from the same allegedly deceptive billing practice that gives rise to the claims of the other class members, namely, CenturyTel's practice of billing for WireWatch under a misleading description. Here, Plaintiffs-Appellees allege that CenturyTel violated § 201(b) because it billed customers for WireWatch under the description "Non-Regulated Services," which is inherently ambiguous and misleading, and therefore unjust and unreasonable under the statute. This is the same allegation any other class member would bring against CenturyTel, and therefore resolution of CenturyTel's liability under § 201(b) with regards to Plaintiffs-Appellees' claim will also resolve the company's liability as to claims brought by other class members. *See Sprague*, 133 F.3d at 399 (explaining that the typicality requirement is satisfied if "as goes the claim of the named plaintiff, so go the claims of the class").

Further, CenturyTel's argument that individual issues of liability predominate over common issues, and thereby preclude a finding of typicality, is unavailing. Whether the customer authorized her enrollment in WireWatch, or whether the customer would have terminated her enrollment in WireWatch if the billing description had been clearer is, as the district court concluded, an issue that goes to damages and can thereby be resolved through resort to subclasses. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (explaining that "[t]here are a number of management tools available to a district court to address any individualized damages issues," such as "bifurcating liability and damage trials," or "appointing a magistrate judge or special master to preside over individual damages proceedings"). To establish liability, Plaintiffs-Appellees must show that CenturyTel billed its customers for WireWatch under a misleading and ambiguous heading (a violation of § 201(b)), and that customers nonetheless paid for WireWatch (satisfying § 206's injury requirement). Whether the customer authorized her enrollment in WireWatch or benefitted from the plan's service, despite being billed for the service under a misleading description, goes only to the issue of damages and does not preclude a finding that the typicality requirement is satisfied. Thus, the fact that some of the class members may have enrolled in WireWatch does not make the Plaintiffs-Appellees' claim atypical. *Cf. Spicer v. Chicago Bd. Options Exch., Inc.*, No. CV 88-0905, 1990 WL 16983, at *6 (N.D. Ill. Jan. 31, 1990) (concluding that "the fact differences relating to the price at which each series traded do not undermine typicality, since plaintiffs' legal allegations and most of their general fact allegations are the same for the representatives and all other members of the class").

> (b)       *Rule 23(a)(4)*: *Adequacy*

CenturyTel also challenges the district court's conclusion that the adequacy requirement of Rule 23(a)(4) is satisfied. CenturyTel maintains that Plaintiffs-Appellees were required to introduce evidence showing how each class member enrolled in WireWatch to establish substantial uniformity, and because Plaintiffs-Appellees failed to do so, they cannot adequately represent the class members. (Appellant's Br. 55-56.) The district court rejected CenturyTel's argument and concluded that the adequacy requirement of Rule 23(a)(4) was satisfied. *Beattie*, 234 F.R.D. at 169. The court explained that "[t]he interests in this case, while of varying degrees, seem to all focus in the same direction." *Id.*

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation marks and citations omitted). In *Stout*, this Court explained that it "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." 228 F.3d at 717; *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (explaining that "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel") (citations omitted).

Based on this standard, the district court did not err in concluding that the adequacy requirement of Rule 23(a)(4) was satisfied. The court stated that "plaintiffs' attorney is an experienced practitioner in this area" because of the "numerous class action cases in which counsel has participated," and CenturyTel did not argue otherwise. *Beattie*, 234 F.R.D. at 169. Further, the district court determined that the interests of the named plaintiffs were not antagonistic to those of the class members. *Id.* The facts support the district court's conclusion, because there is no indication of a conflict of interest between the named plaintiffs and the class members. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, __ F.3d __ , 2007 WL 2239208, at *7 (noting that "adequacy of representation turns in part on . . . absence of conflicts of interest") (internal quotation marks and citations omitted). The Plaintiffs-Appellees and the class members suffered the same injury—all were billed for WireWatch under a misleading description—and, therefore, there is every reason to believe that the Plaintiffs-Appellees will vigorously prosecute the interests of the class. *Id.* ("Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members.") (alterations in original; citations and internal quotation marks omitted). Taken together, these factors indicate that the district court did not abuse its discretion in concluding that the adequacy-of-representation requirement of Rule 23(a)(4) is satisfied.

      3.     *Rule 23(b)*

The district court also held that the requirements of Rule 23(b)(3) were satisfied. *Beattie*, 234 F.R.D. at 169-171. In concluding that common questions predominate over questions affecting individual class members, the district court determined that

> [a]lthough damages may be individualized and not all customers who received ambiguous bills will say that they did not order or authorize the inside wire maintenance insurance program, the overarching question of whether the billing itself violates section 201(b) or Rule 64.2401 predominates and must be determined before any customer has a right to recover under that theory.

*Id.* at 170. In response to CenturyTel's argument that "the need to prove causation for each plaintiff to show liability demonstrates that individual issues predominate," the district court stated that "the necessity of each plaintiff proving the amount of his or her damages is generally not an impediment to class certification." *Id.* The court explained that

> the questions of causation and damages in this case can be addressed later in the proceedings by means of a special master, representative trials, or other means. However, because the liability issue predominates, this case falls easily into the category of "cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."

*Id.* at 171 (quoting *Windsor*, 521 U.S. at 615).

CenturyTel maintains that each class member must establish injury to prove liability under §§ 201 and 206, and "fact of injury is *not* a common issue among class members." (Appellant's Br. 21.) According to CenturyTel, the district court confounded the need of each class member to establish injury with the need to establish damages. (*Id*.) CenturyTel contends that causation and injury, unlike damages, must be established on a class-wide basis. (*Id*. 24)

(a)          *Predominance Requirement*

A class action may be maintained only if it qualifies under one of the subsections of Rule 23(b) of the Federal Rules of Civil Procedure. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 n.12 (6th Cir. 2004). Under Rule 23(b)(3), a class action is appropriate where

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 632; *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 136 (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (internal quotation marks omitted)). Further, "the fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Id.* at 138 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)). Lastly, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.

Section 201(b) provides that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). Section 206 establishes that a common carrier is liable for conduct that violates section 201(b):

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206. Section 207 authorizes individuals injured by a common carrier's actions to bring suit:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United

> States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

> The FCC also enacted a regulation intended to clarify the meaning of § 201(b):

> Descriptions of billed charges. Charges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered. The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received, and that the costs assessed for those services conform to their understanding of the price charged.

47 C.F.R. § 64.2401(b). Further, in its report issued during the rulemaking process that led to the enactment of § 64.2401(b), the FCC explained:

> We contemplate that sufficient descriptions will convey enough information to enable a customer reasonably to identify and to understand the service for which the customer is being charged. Conversely, descriptions that convey ambiguous or vague information, such as, for example, charges identified as "miscellaneous," would not conform to our guideline. *Similarly, in our view, a charge described by what it is not, such as, for example, "service not regulated by the Public Service Commission" is inherently ambiguous and does not disclose sufficient information.* There is no way for a consumer to discern from this description that the charge refers to, for example, inside wiring maintenance insurance.

*In the Matter of Truth-In-Billing and Billing Format*, 14 F.C.C.R. 7492, at 7517-18 (Apr. 15, 1999) (internal footnotes omitted) (emphasis added). As the district court noted, "[t]he language chosen by the defendant to describe its optional inside wire maintenance service closely tracks the phrasiology criticized by the FCC as 'inherently ambiguous,' specifically as it might be applied to describe the very service at issue in this case." *Beattie*, 234 F.R.D. at 166.

Plaintiffs-Appellees conceded before the district court that § 201 is not a strict-liability statute and therefore they must establish "some type of injury" to allege a claim under §§ 201 and 206. *Id.* at 170. Contrary to CenturyTel's argument, however, Plaintiffs-Appellees have raised common allegations which would allow the district court to determine liability for the class as a whole. First, Plaintiffs-Appellees allege that CenturyTel billed for WireWatch under the misleading description, "Non-Regulated Services," in violation of § 201(b). (JA 18; Compl. ¶ 22.) The district court noted that "[t]he defendant's custom of charging for its optional inside wire maintenance insurance under the heading 'non-regulated services' gives no hint at the services for which charges are assessed." *Beattie*, 234 F.R.D. at 172 (stating that the WireWatch description "does not satisfy the FCC's truth-in-billing requirement and constitutes an unreasonable practice within the meaning of section 201(b)"). As the FCC made clear in its regulation, § 201(b) is violated when the description for a billed service is not "sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received . . . ." 47 C.F.R. § 64.2401(b). Further, the FCC's report specifically states that "a charge described by what it is not, such as, for example, 'service not regulated by the Public Service Commission' is inherently ambiguous and does not disclose sufficient information." *In the Matter of Truth-In-Billing and Billing Format*, 14 F.C.C.R. 7492, at 7517-18 (Apr. 15, 1999) (internal footnotes omitted). Thus, Plaintiffs-Appellees have set forth sufficient allegations to show that CenturyTel's billing practice violated § 201(b), because the

description used by CenturyTel is virtually identical to the misleading description the FCC condemned in its regulation and report.

Second, under § 206, Plaintiffs-Appellees must establish that each class member was injured by CenturyTel's violation of § 201(b).  47 U.S.C. § 206 (stating that a "common carrier shall be liable to the person or persons injured" by its unlawful practice).  This can be done by showing that each class member paid for WireWatch during the period when the service was billed under the misleading description.  Before the district court, CenturyTel admitted that "it did send some bills to customers that contained this language," *Beattie*, 234 F.R.D. at 173, and an inventory of CenturyTel's billing records could disclose which customers paid their bills in full, which would include a payment for fees associated with WireWatch.  On appeal, CenturyTel argues that "only those customers who can establish that they did not want or request the WireWatch service can establish CenturyTel's liability . . . ."  (Appellant's Br. 40.)

CenturyTel is incorrect.  Under § 206, CenturyTel is liable if it violated § 201(b), which makes it unlawful for CenturyTel to bill for a service under a misleading description, even where the customer requested the service.  *See* 47 C.F.R. § 64.2401(b) ("The description must be sufficiently clear in presentation and specific enough in content so that customers can accurately assess that the services for which they are billed correspond to those that they have requested and received . . . .").  True, each class member will have to show that she did not enroll in WireWatch, but that is relevant, as the district court concluded, to the issue of damages and not liability.  Thus, Plaintiffs-Appellees should be able to establish liability for the class as a whole because the misleading description used by CenturyTel violated § 201(b), and class members were injured by that violation when they paid their telephone bill, which included a charge for WireWatch under a misleading description (a § 206 violation).

(b)    *Superiority Requirement*

The district court also addressed the superiority requirement of Rule 23(b)(3).  The court noted that the amount of a single class member's potential recovery was small, making class resolution superior to other methods of adjudicating the controversy.  *Beattie*, 234 F.R.D. at 171.  In concluding that the Plaintiffs-Appellees satisfied the requirements of Rule 23(b)(3), the district court explained that "the potential recovery by an individual is relatively small, the liability issue predominates, the issues of management can be addressed by various procedural mechanisms and careful definition of subclasses, and the likelihood of an individual class member preferring to take control of the litigation is remote."  *Id.*

One factor to consider in determining whether the superiority requirement of Rule 23(b)(3) is satisfied are "the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).  In *Windsor*, the Supreme Court explained that litigation should be brought as a class action if individual suits would yield small recoveries.  The Court stated that "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Here, individual suits would yield only a small amount of damages, because the most each class member would have paid for WireWatch between 1994 and 2001 is roughly $124.68.[1]  Such a small possible recovery would not encourage individuals to bring suit, thereby making a class

---

[1] This amount was calculated based on Plaintiffs-Appellees' allegation that CenturyTel charged $0.50 per month for WireWatch in 1994, $0.99 per month between 1995 and 2000, and $3.95 per month in 2001.  (JA 19; Compl. ¶ 23.) Assuming that a customer was billed twelve times a year, WireWatch fees would have been approximately $6 for 1994, $11.88 each year between 1995 and 2000, and $47.40 in 2001.

action a superior mechanism for adjudicating this dispute. *See id.* ("'A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.'") (quoting *Mace*, 109 F.3d at 344); *see also Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) (same). Thus, the district court did not err in holding that the superiority requirement of Rule 23(b)(3) is satisfied.

### 4.       *Plaintiffs-Appellees' State Law Claims*

Lastly, we briefly address CenturyTel's contention that the district court erred in certifying Plaintiffs-Appellees' state-law claims (Counts IV and V). CenturyTel argues that the district court's decision failed to analyze whether Plaintiffs-Appellees' state-law claims met the Rule 23 requirements, and, alternatively, Plaintiffs-Appellees' state-law claims are not appropriate for class certification because individual issues overwhelm any common issues. (Appellant's Br. 44-45.) Conversely, Plaintiffs-Appellees point out that the district court's class-certification decision "purposely did not address the state law claims." (Appellee's Br. 46.)

A review of the district court's decision leaves some ambiguity as to how that court intended to proceed with Plaintiffs-Appellees' state-law claims. In an order dated May 29, 2003, the district judge presiding over the case stated that, "[a]fter further discussion with the parties, the [c]ourt finds that the parties should first focus on the merit of the plaintiffs' federal claims and the propriety of class certification concerning those claims." (JA 76.) Plaintiffs-Appellees urge us to construe this language as binding rather than merely hortatory: in their estimation, this language makes clear that their state-law claims were not pending before the district court in its certification decision and therefore are not currently pending before us on appeal.

On the other hand, Plaintiffs-Appellees' August 15, 2003 motion for class certification, which was filed after the May 29, 2003 order, requested certification that included the state-law claims. The district court's opinion granting class certification expressly references state-law theories and specifically lists Plaintiffs-Appellees' state-law claims by count. The opinion also grants the motion for certification without qualification exempting the state-law claims. Moreover, the district court's instruction to "first focus on . . . plaintiffs' federal claims" is ambiguous. The court may have meant that it planned to deal with the certification of state-law issues in a separate proceeding at a later time, or it may have meant that, within the same proceeding, it first planned to deal with the federal-law issues and then move on to the state-law matters. Given this uncertainty and the fact that the district court's certification analysis does not account for Plaintiffs-Appellees' state-law claims, a remand is appropriate for the district court to apply the Rule 23 criteria to the state-law claims.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment certifying Plaintiffs-Appellees' class as to Plaintiffs-Appellees' federal-law claims in Count I and **REMAND** Plaintiffs-Appellees' state-law claims to the district court to conduct a certification analysis of such claims consistent with this opinion.