*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CARRIE SCHLAUD; EDWARD J. GROSS; NORA
I. GROSS; PEGGY M. MASHKE; DIANA ORR,
and others similarly situated,
            *Plaintiffs-Appellants*,

      *v.*

RICK SNYDER, et al.,
            *Defendants*,

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; MICHIGAN COUNCIL 25 OF THE
AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, AFL-CIO;
CHILD CARE PROVIDERS TOGETHER
MICHIGAN,
            *Defendants-Appellees*.

No. 12-1105

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-147—Robert J. Jonker, District Judge.

Argued: December 6, 2012

Decided and Filed:  May 22, 2013

Before:  MOORE and COOK, Circuit Judges; and BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William L. Messenger, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, Springfield, Virginia, for Appellants.  John M. West, BREDHOFF & KAISER, P.L.L.C, Washington, D.C., for Appellees. **ON BRIEF:** William L. Messenger, NATIONAL RIGHT TO WORK LEGAL DEFENSE

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

FOUNDATION, Springfield, Virginia, for Appellants.  John M. West, BREDHOFF &
KAISER, P.L.L.C, Washington, D.C., for Appellees.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs-Appellants are home
childcare providers in Michigan seeking to file a class-action lawsuit for the return of
union dues and agency fees that were collected allegedly in violation of their First
Amendment rights.  The district court denied certification of plaintiffs' proposed
class—all home childcare providers in Michigan—because there was a conflict of
interest within the class that undermined the adequacy of the named plaintiffs'
representation:  some members voted for union representation and others voted against
union representation.  Plaintiffs attempted to cure this conflict by proposing a subclass
of only those providers who did not participate in any election related to union
representation.  The district court determined that plaintiffs' proposed subclass did not
cure within-class conflicts because the district court could not assume that all members
of the subclass opposed union representation.  The district court further reasoned that,
even if all members of the proposed subclass did oppose union representation, their
reasons for doing so were different enough to create a conflict within the class.

On appeal, plaintiffs argue that the district court abused its discretion in denying
certification of both their proposed class and their proposed subclass because no conflict
existed within either class.  We disagree and **AFFIRM** the district court's denial of
certification of plaintiffs' proposed class and subclass.

**I. BACKGROUND**

Plaintiffs Carrie Schlaud, Edward Gross, Nora Gross, Peggy Mashke, and Diana
Orr are home childcare providers in Michigan.  Plaintiffs receive subsidies from the
State of Michigan's Child Development and Care Program ("CDC") for providing
childcare services for low-income families.  The CDC helps qualifying parents enter the

workforce by providing a means to afford childcare services. Under the CDC, parents choose a childcare provider, and the Michigan Department of Human Services ("DHS") makes direct payments to that provider. In theory, providers can charge parents the difference between their rates and the money received from the CDC subsidy; in reality, most qualifying parents are unable to afford anything, so providers generally receive the subsidy alone as payment for their services.[1] Although they receive subsidies directly from the state, "[home childcare] providers are not employed by the State of Michigan." R. 83-1 (Ex. 2 - CDC Handbook at 5) (Page ID #1504).

In 2006, DHS and Mott Community College ("Mott") entered into an interlocal agreement ("ILA") to create the Michigan Home Based Child Care Council ("the Council"). DHS and Mott established the Council with the intent "to establish a mechanism for improving the quality of child care provided in home settings, raising standards and improving training for home based child care providers, and stabilizing the home based child care industry." R. 83-2 (Ex. 8 - ILA at 3) (Page ID #1593). The ILA grants the Council "the right to bargain collectively and enter into agreements with labor organizations." *Id*. at 16 (Page ID #1606).

In the fall of 2006, the Council began negotiations with Child Care Providers Together Michigan ("CCPTM" or "the Union"). CCPTM is a joint venture between International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Michigan Council 25 of the American Federation of State, County and Municipal Employees. Prior to the negotiations between the Council and CCPTM, a neutral third party certified CCPTM as the exclusive majority collective bargaining representative of home childcare providers in Michigan, based on the submission of 22,180 valid provider-signed authorization cards out of a possible 40,532 eligible providers. R. 83-2 (Ex. 7 - Certification of Results) (Page ID #1588–89). After the card check, "[t]he Union . . . petitioned the Michigan Employment Relations Commission ("MERC") for an election under the guidelines of M.C.L. § 423.212." R.

---

[1]"Michigan has a turnover rate of approximately 40% per year in family day care homes, partially because childcare professionals receive such low wages and typically no health benefits." R. 83-1 (Ex. 4 - CDC Presentation at 15) (Page ID #1559).

118 (08/30/2011 D. Ct. Op. at 4) (Page ID #2592).  MERC certified CCPTM as the representative after the secret-ballot election, in which 5,921 out of 6,396 ballots cast were in favor of the Union.  R. 83-3 (Ex. 13 - Certification of Representative) (Page ID #1672); R. 83-3 (Ex. 12 - Tabulation of Results) (Page ID #1670).

The Union and the Council entered into a Collective Bargaining Agreement ("CBA"), which became effective on January 1, 2008.  R. 83-3 (Ex. 17 - CBA) (Page ID #1691–727).  Prior to signing the CBA, the Union "conducted a mail ballot election to ratify the tentative agreement reached with the . . . Council."  R. 83-3 (Ex. 16 - CBA Ratification Results) (Page ID #1688).  An arbitrator found that 4,806 home childcare providers voted in favor of the CBA, seventy-eight providers voted against it, and twenty-two ballots were spoiled.[2]  *Id.*  Under the terms of the CBA, home childcare providers receiving subsidies through the CDC were required to become members of the Union or to pay a service fee (also known as an agency fee).  R. 83-3 (Ex. 17 - CBA at 9) (Page ID #1700).

In January 2009, DHS began deducting 1.15% from subsidy payments made to home childcare providers.  R. 19 (Governor and DHS Director Answer at ¶ 30) (Page ID #336); R. 83-4 (Ex. 18 - Letter) (Page ID #1730).  The deducted funds were sent to the Council, which then forwarded them to the Union.  "The Union collected $2,000,019.09 in 2009 and [at least] $1,821,635.21 in 2010."  R. 118 (08/30/2011 D. Ct. Op. at 5) (Page ID #2593) (citing R. 79 (Mot. for Summ. J. App. at 10) (Page ID #819)).

On February 17, 2010, plaintiffs filed a class-action suit against the Union, the Council, the Governor of Michigan, and the director of DHS.  In their complaint, plaintiffs alleged that defendants deprived plaintiffs "of their rights to free association and speech under the First Amendment, as secured by the Fourteenth Amendment and 42 U.S.C. § 1983," by "compelling Plaintiffs and the members of the Plaintiff class to financially support the Union as their state-designated political representative."  R. 1

---

[2]The named plaintiffs did not participate in the card check, secret-ballot election, or the ratification election.

(Compl. at ¶ 41) (Page ID #12–13).  On January 15, 2011, plaintiffs moved to certify the following plaintiff class under Federal Rule of Civil Procedure 23(b)(1)(A) or 23(b)(3):

> All individuals who:  (1) are home childcare providers in the State of Michigan, including all those classified as Group Homes, Family Homes, Relative Care Providers, or Day Care Aides, and, (2) have had any Union dues or fees deducted from the subsidy paid to them by Michigan's Department of Human Service.

R. 63 (Mot. for Certification) (Page ID #634–35).  Plaintiffs also requested that the district court certify, in the alternative, any class that it deemed appropriate.  *Id*.

The district court denied plaintiffs' motion for certification because a conflict of interest within plaintiffs' proposed class undermined the adequacy of the named plaintiffs' representation under Federal Rule of Civil Procedure 23(a)(4).  R. 118 (8/30/2011 D. Ct. Op. at 8–12) (Page ID #2596–600).  The conflict identified by the district court was:

> 4,806 providers (and potential class members) voted in favor of the collective bargaining agreement, which included a provision requiring providers to pay union dues or agency fees.  These results, unchallenged by the plaintiffs, establish that a substantial number of providers and potential class members not only wanted union representation, but were willing to pay union dues or an agency fee to receive it.  Those providers are of a different type than the plaintiffs, because they have voted for union representation and have ratified the union dues by way of the CBA.  Accordingly, the potential class representatives—all of whom oppose union representation in any form—are inherently at odds with a substantial number[] of the potential class members they seek to represent.

*Id.* at 10 (Page ID #2598).

The district court also determined that no alternative class could be certified under Rule 23(a)(4) because even if all potential class members opposed financially supporting the Union, their motivations for that opposition were different enough to create conflict.  Relying on *Weaver v. University of Cincinnati*, 970 F.2d 1523 (6th Cir. 1992), and *Gilpin v. AFSCME*, 875 F.2d 1310 (7th Cir.), *cert. denied*, 493 U.S. 917 (1989), the district court explained that although some members of the subclass, like

plaintiffs, would not support the Union regardless of the benefits it might bring, there were other members of the subclass who approved of the potential benefits of unionization but nonetheless would not financially support the Union in hopes of free-riding on the Union's success.  R. 118 (08/30/2011 D. Ct. Op. at 10) (Page ID #2598); R. 123 (12/22/2011 D. Ct. Op. at 5) (Page ID #2630).

Plaintiffs attempted to cure the conflict identified by the district court by proposing a subclass of:

> All individuals who:  (1) are home childcare providers in the State of Michigan, including all those classified as Group Homes, Family Homes, Relative Care Providers, or Day Care Aides, (2) had any Union dues or fees deducted from the subsidy paid to them by Michigan Department of Human Service, and (3) did not sign authorization cards for the Union or vote in elections that regarded Union representation or ratification of the Union's collective bargaining agreement.

R. 120 (Mot. to Amend J. at 1) (Page ID #2608).  The district court determined that plaintiffs' proposed subclass did not cure the conflict because "[s]hort of requiring depositions of each provider in the proposed subclass, it is impossible to determine the motivations behind each provider's action (or inaction) regarding the Union."  R. 123 (12/22/2011 D. Ct. Op. at 5) (Page ID #2630).  Relying again on *Weaver* and *Gilpin*, the district court concluded that it "cannot simply assume that non-voting providers are hostile to Union representation."  *Id.*  Plaintiffs timely appealed the denial of certification.

## II.  CLASS CERTIFICATION[3]

We review the district court's denial of class certification for abuse of discretion. *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011).  "The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation."  *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007) (quotation marks omitted).  "The district court's decision certifying the class is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion."  *Id*. at 559–60 (quotation marks omitted).  "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment."  *Randleman*, 646 F.3d at 351 (quotation marks and alteration omitted).

Plaintiffs have the burden of establishing their right to class certification. *Beattie*, 511 F.3d at 560.  The Federal Rules of Civil Procedure impose four prerequisites to a class action:

---

[3]Although the district court dismissed this case as moot against the union defendants because defendants tendered monetary and nominal damages to the named plaintiffs, we retain jurisdiction to consider whether the district court properly denied certification of plaintiffs' proposed class and subclass. R. 118 (08/30/2011 D. Ct. Op. at 13–18) (Page ID #2601–06); *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) ("We therefore hold that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied."); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("To deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration.  Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.").  The Court's decision in *Genesis Healthcare Corp. v. Symczyk* is not at odds with this determination because it does not involve class certification under Rule 23, which is "fundamentally different from collective actions under the FLSA" because "a putative class acquires an independent legal status once it is certified under Rule 23[, whereas u]nder the FLSA . . . , 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." — U.S. —, 133 S. Ct. 1523, 1529–30 (2013).  Furthermore, plaintiffs in the present case moved for certification prior to defendants' attempt to settle.  *Id*. at 1530 ("*Geraghty* is inapposite, because the Court explicitly limited its holding to cases in which the named plaintiff's claim remains live at the time the district court denies class certification. . . .  Here, respondent had not yet moved for 'conditional certification' when her claim became moot, nor had the District Court anticipatorily ruled on any such request.").

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The district court must engage in a "rigorous analysis" to ensure that these factors are present before it can certify a class. *Beattie*, 511 F.3d at 560 (quotation marks omitted). This case revolves primarily around the fourth factor: adequacy of representation.[4]

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quotation marks and citations omitted). If "the district court [has] some indication that the named plaintiffs' interests could be divergent from those of other members of the proposed class," the district court does not abuse its discretion in denying certification. *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1531 (6th Cir. 1992).

## A. Proposed Class

Plaintiffs' proposed class consists of any home childcare provider in the State of Michigan who had union dues or agency fees deducted from a subsidy payment from DHS. The district court denied certification because a conflict existed within this proposed class: the interests of "the potential class representatives—all of whom oppose union representation in any form—are inherently at odds with a substantial number[] of

---

[4]We note that our analysis under the adequacy-of-representation factor could also be expressed in terms of commonality or typicality:

> The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).

the potential class members" who "not only wanted union representation, but were willing to pay union dues or an agency fee to receive it." R. 118 (08/30/2011 D. Ct. Op. at 10) (Page ID #2598). Plaintiffs assert that their interests are not at odds with potential class members because they "share[d] . . . a common interest in not being forced to financially support an expressive organization without their consent and in violation of their First Amendment rights." Appellants Br. at 16. The evidence in the record leads us to the opposite conclusion.

The record shows that 4,806 home childcare providers approved the CBA that contains the provision authorizing deductions from subsidy payments to support the Union. R. 83-3 (Ex.16 - Election Results) (Page ID #1688); R. 83-3 (Ex. 17 - CBA at 9) (Page ID #1700). Thus, plaintiffs' proposed class includes a substantial number of providers who voted in favor of financially supporting the Union in an action that alleges that the entire class was forced to support the Union financially. This is a clear conflict within the proposed class. Plaintiffs, who allege that they were compelled to pay the fees under the CBA, have divergent interests from other potential class members, who voted in favor of that same CBA. Further, those who voted for the CBA did not suffer the injury alleged by plaintiffs because they were not compelled to support the Union financially—they voted to do so. Finally, plaintiffs' lawsuit would impair the ability of the Union to represent its members and is, therefore, not in the interest of those proposed class members who voted in favor of using collective action to improve the conditions of the CDC. The district court did not abuse its discretion in denying certification of plaintiffs' proposed class because plaintiffs fail to meet the prerequisite of adequacy of representation under Rule 23(a)(4).[5]

---

[5] As noted earlier, plaintiffs requested in their motion for class certification that the district court certify, in the alternative, any class that it deemed appropriate. R. 63 (Mot. for Certification) (Page ID #634–35). The district court determined that no appropriate alternative class could "be certified consistent with Rule 23(a)(4)." R. 118 (8/30/2011 D. Ct. Op. at 9) (Page ID #2597). We agree with the district court's conclusion for the reasons discussed in our analysis of plaintiffs' proposed subclass.

**B. Proposed Subclass**

Plaintiffs' proposed subclass includes any home childcare provider who did not vote in any Union-related election. Plaintiffs argue that this subclass cures the conflict identified above because no one in the proposed subclass expressed support for the Union. In effect, plaintiffs attempt to meet their burden of establishing their right to class certification by asking this court to assume that any home childcare provider who did not vote in any election related to the Union is opposed to supporting the Union financially. We decline to make this assumption.

There are a variety of reasons why a home childcare provider might not participate in any of the Union elections, but one stands out to us. As noted earlier, there is a high turnover rate of home childcare providers. Also noted earlier, the Union elections occurred years before DHS made deductions from potential subclass members' subsidy payments. The combination of these two facts leads us to a simple conclusion: many of the potential subclass members did not vote in the Union elections because they were not then home childcare providers receiving subsidy payments (i.e., not eligible voters). *See* Appellants Br. at 10–11. We cannot assume that these new home childcare providers are uniformly opposed to supporting the Union financially because the record indicates that in each Union election, a majority of voters supported the Union. *See Hansberry v. Lee*, 311 U.S. 32, 45 (1940) ("Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires."). The interests of those providers who would financially support the Union are in conflict with the interests of plaintiffs. Therefore, plaintiffs failed to meet their burden of establishing their right to certification of their proposed subclass.[6]

---

[6]We need not address the district court's reliance on *Weaver v. University of Cincinnati*, 970 F.2d 1523, 1531 (6th Cir. 1992), and *Gilpin v. AFSCME*, 875 F.2d 1310, 1313 (7th Cir.), *cert. denied*, 493 U.S. 917 (1989), because "we are free to affirm the judgment on any basis supported by the record." *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002).

## III.  CONCLUSION

For the reasons set forth in this opinion, we **AFFIRM** the district court's denial of plaintiffs' proposed class and subclass.