WOOD, Chief Judge. Class and collective actions are designed to provide an efficient vehicle to resolve the claims of a large number of plaintiffs in one fell swoop. They can offer benefits to both sides in a case: plaintiffs are able to aggregate resources in order to litigate small claims, and defendants can achieve a global resolution of the dispute. But class actions are not always the best vehicle for delivering relief. This is why Federal Rule of Civil Procedure 23 establishes a number of criteria that parties (usually plaintiffs) must meet in order to maintain a class action, and why district courts have considerable discretion in determining whether and how to manage such actions. The appellants in this case are home health care assistants who wanted the district court to certify a class of their fellow assistants for purposes of securing a class-wide refund of the fair-share fees they paid to a union for collective bargaining representation. For a number of reasons, the district court found that the class should not be certified. It awarded injunc-tive relief in favor of the plaintiffs, as well as individual damages, and this appeal followed. Because we find no abuse of discretion in the court’s refusal to certify the class, we affirm. I The State of Illinois, through its Department of Human Services Home Services Program, pays personal home health care assistants to deliver care to elderly and disabled persons in the state. Under Illinois law, the assistants are considered public employees for purposes of collective bargaining. See Illinois Public Labor Relations Act (IPLRA), 20 ILCS 2405/3(f). The same law authorizes the state to engage in collective bargaining with an exclusive representative of home care and health workers. See id. Since 2003, SEIU Healthcare Illinois & Indiana (the “Union”) has been the exclusive representative. The exclusive representative is required to represent all public employees, whether or not they are members of the Union. Under the terms of its collective bargaining agreement with the state, the Union was entitled to collect limited fees from workers who chose not to join the Union in order to help cover the cost of certain activities, principally the collective bargaining representation it furnished to everyone. These fees were known as “fair-share fees,” and until recently they were automatically deducted from the pay of assistants who were not Union members. Some workers objected to this fair-share arrangement. In April 2010, they filed this suit, in which they contend that the involuntary deduction and collection of the fair-share fees violates their First Amendment rights and entitles them to relief pursuant to 42 U.S.C. § 1983. For convenience, we refer to them as the Objectors. The district court dismissed their claim and we affirmed, see Harris v. Quinn, 656 F.3d 692 (7th Cir. 2011) (detailing the plaintiffs’ First Amendment claims). But the Supreme Court agreed with the Objectors and reversed in Harris v. Quinn, — U.S. —, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014). In accordance with the Court’s decision in Harris, we remanded the case to the district court for further proceedings. Once back in the district court, the Objectors amended their complaint to substitute new named plaintiffs for their proposed class and to reflect the fact that the Governor of Illinois is now Bruce V. Rauner. They then sought certification of a class of all non-union member assistants from whom fair-share fees were collected from April 2008 until June 30, 2014 (the date of the Supreme Court’s Harris decision), when the state stopped the fair-share deductions. The Objectors contend that their proposed class, which numbers around 80,-000 members, is entitled to a refund of the total of the fair-share fees paid by its members—approximately $32 million. The Union opposed the motion for class certification; the Governor took no position on the class issue and is not participating in this appeal. The district court decided that class certification was inappropriate for several reasons: the class • definition was overly broad in light of evidence (detailed by the court) that a substantial number of class members did not object to the fee and could not have suffered an injury; the named plaintiffs were not adequate representatives; ■ individual questions regarding damages predominated, over common ones; the class faced serious manageability issues; and a class action was not a superior .method of resolving the issue. The parties .then stipulated to a judgment permanently enjoining the future collection of fair-share fees and. awarding money damages to the named plaintiffs. The district court entered final judgment, and this appeal followed. II The Objectors have placed most of their reliance on appeal on the argument that the' district court’s refusal to certify rested on an error of law: specifically, the proposition that deducting the fair-share fees could have caused a First Amendment injury to a worker only if she subjectively opposed the Union or the fee at the time it was paid. We review the district court’s denial of class certification for abuse of discretion. Kleen Prod. LLC v. Int’l Paper Co., 831 F.3d 919, 922 (7th Cir. 2016). “A district court abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact.” Kress v. CCA of Tenn., LLC, 694 F.3d 890, 892 (7th Cir. 2012). In order to have a case in a federal court, a plaintiff must plead that she has been injured in a concrete and particularized way by á defendant’s actions. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). And in order to state a claim under 42 U.S.C. § 1983,’ that injury must include a violation of the plaintiffs constitutional or statutory rights. The named plaintiffs here alleged that collecting fair-share fees without consent ran afoul of the First Amendment, and the Supreme Court agreed with them. The named plaintiffs then settled with the Union; the nature of their injuries is thus not before us. The' proposed class, however, presents interesting aspects of the nature of injury in First Amendment compelled subsidization cases. Whereas we understand that the named plaintiffs objected to the collection of the fair-share fees and to collective bargaining representation, we have no way of knowing whether :or how many of the remaining class members shared that opposition. Nothing in Harris said that people could not voluntarily join a union, or voluntarily pay a fair-share fee. Its focus was exclusively on compelled participation. See, e.g., 134 S.Ct. at 2644 (“The First Amendment prohibits the collection of an agency fee from personal assistants in the Rehabilitation Program who do not want to join or support the union”) (emphasis added). The district court highlighted the Union’s evidence that many of 'the would-be class members had submitted affidavits contending that they did not object to the fair-share fees and would have consented if given the chance (a step that was unnecessary during the pre-Harris regime, when fair-share fees were automatically collected). It concluded that there were likely a significant number of workers in the proposed class whose First Amendment rights had not been injured by the fee collection. The Objectors urge that the question whether any given worker in the proposed class was subjectively opposed to paying the fees is, extraneous to whether or not their First Amendment rights were violated. They characterize the injury as the denial of the choice to pay or not pay. In their view, it is enough that the money was taken without their affirmative consent and used for purposes of collective bargaining representation. But we cannot accept that characterization in the face of direct evidence from the supposedly injured class 'members that they did not feel injured at all, and- that they would have happily paid the fair-share fee without complaint. The premise of-the Objectors’ argument—that these funds were taken without.consent—stands on shaky ground. They presume that silence was equivalent to non-consent, while the Union argues that silence against-the backdrop of the ¿arlier legal regime in which there was no obligation to signify consent is at worst uninformative, and if anything suggests consent. - We can assume that the taking of money without consent or legal justification is enough to give rise to some kind of a tort, but it is less clear that such a taking implicates the First Amendment. Compelled subsidization can violate the First Amendment because it impinges on First Amendment rights. See Knox v. Serv. Emps. Int’l Union, Local 1000, 567 U.S. 298, 321, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) (“[B]y allowing unions to collect any fees from nonmembers ... our cases have substantially impinged upon the First Amendment rights of nonmembers. ... [W]e see no justification for any further impingement. The general rule—individuals should not be compelled to subsidize private groups or private speech—should prevail”). Nonetheless, a course of conduct or a rule that impinges upon the exercise of a legal right does not always injure the people it affects, certainly not if they consent or voluntarily accept the rule. In the compelled speech context, for instance, although a requirement to recite the Pledge of Allegiance every morning might imper-missibly impinge upon all students’ rights to choose whether to do so, see W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), it seems fair to say that many of them would happily have recited the Pledge anyway and thus .suffered no First Amendment injury from the rule. Or, to take another example, most Granite Staters evidently had no objection to the motto “Live Free or Die” on their license plates, and so would not have had standing to object to it, even though George Maynard found it repugnant to his beliefs. See Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The Objectors urge that even if some measure of subjective opposition is required to show a First Amendment injury, the choice not to join the Union ought to be sufficient to demonstrate that opposition and hence to show a First Amendment injury. But a chqice not to join the Union is not the relevant one for our purposes. This case has always been about the decision whether to support collective bargain-, ing representation and pay the fair-share fee, and the personal assistants were never asked to express a preferehce on that point. At most, we know that the proposed class members did not become full union members during the period when the fees were collected. We have no way of knowing which of three choices they might have made, had Harris been on the 'books during the entire time: join the Union; voluntarily pay fair-share fees; or pay nothing. The Objectors scoff at the idea that anything but “pay nothing” would be selected, but the district court had before it evidence that the majority of personal assistants in 2003 voted for union representation, that a majority ratified the collective bargaining agreement in 2008 and 2012, and that 65% of the proposed class members who are still personal assistants have since joined the union. It .was a reasonable inference .from those facts. that, a significant number of class members would indeed have chosen the first or second option, had they realized the need to do so. The question whether it is permissible to take subjective factors into account in a First Amendment case has interesting implications in the class action context. In order to be ascertainable, a class must be defined baséd on objective criteria. Classes “defined by subjective criteria, such as by a person’s state of mind, fail the objectivity requirement.” Mullins v. Direct Digital, LLC, 795 F.3d 654, 659-60 (7th Cir. 2015) (citations omitted). The result may be that class treatment is more difficult to secure in such a personal area as First Amendment rights, once the principle prohibiting coerced speech is in place. ■We need not-pursue this possibility further for present purposes, because the district court offered additional, independent, reasons for declining to certify the class. It' found that Rule 23’s requirements were not met because (1) the intra-class conflicts of interest rendered the named plaintiffs inadequate as class .representatives, and-(2) .common questions did not predominate so as .to make a class action superior to individual actions. Looking first at adequacy of representation, we recall that this is one of the four essential criteria established by Rule 23(a) for all class actions: numerosity, adequacy of representation, commonality, and typicality. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). The district court did not abuse its discretion in finding that there are serious intra-class conflicts of interest in the Objectors’ proposed class, and-that the proposed representatives cannot fairly and'adequately protect all prospective members. Fed. R. Civ. P. 23(a)(4). “Because a class action is an exception to the usual rule that ‘only a named party before the court can have her claims adjudicated, the-class representative must be part of the class and possess the same interest and suffer the same injury.” Bell v. PNC Bank, Nat’l Ass’n, 800 F.3d 360, 373 (7th Cir. 2015). “A class is not fairly and-adequately represented if class.members have antagonistic or conflicting claims.” Retired Chicago Police Ass’n v. City of Chicago, 7 F.3d 584, 598 (7th Cir. 1993) (quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)). We addressed intra-class conflicts of interest in a case involving people who declined to join a union nearly two decades ago in Gilpin v. American Federation of State, Cnty., & Mun. Employees, AFL-CIO, 875 F.2d 1310 (7th Cir. 1989). There we affirmed a district court’s refusal to certify a class of 10,000 non-union members in a suit seeking restitution for fair-share fees deducted following defective notice. We held that the judge was right not to certify the class in that case because of a potentially serious conflict of interest: Two distinct types of employee will decline to join the union representing their bargaining unit. The first is the employee who is hostile to unions on political or ideological grounds. The second is the employee who is happy to be represented by a union but won’t pay any more for that representation than he is forced to. The two types have potentially divergent aims. The first wants to weaken and if possible destroy the union; the second, a free rider, wants merely to shift as much of the cost of representation as possible to other workers, ie., union members. Id. at 1313. In so doing, we noted that seeking a restitution remedy was suitable only for the type of plaintiff who is hostile to the unions, and that the windfall of restitution might embarrass or ruin the union—an outcome that the second type of employees would not want. Id. In a more recent case, Schlaud v. Snyder, 785 F.3d 1119 (6th Cir. 2015), our sister circuit affirmed a denial of class certification in similar circumstances, where the plaintiffs challenged fair-share fees and sought to certify a class and a subclass of home childcare workers. The class included workers who were members of the union or voted in favor of the collective bargaining agreement, while the subclass included those who did not have the chance to vote in the union election. Id. at 1125-28. The Sixth Circuit emphasized that the plaintiff representatives would have a clear conflict of interest with class members who were union members. Id. at 1127. Further, the court noted that when given an opportunity to vote, a significant percentage voted in favor of union representation. Id. It was therefore fair to presume that some members of the subclass would have wanted to be members of the union. The Sixth Circuit held that it was not an abuse of discretion to find that the named plaintiffs could not adequately represent the proposed classes or subclasses, as both would have “include[d] members whose ‘probable preferences’ would have been in conflict ....” Id. at 1128. The situations in both Gilpin and Schlaud may not be identical to the one before us. But, as the district court rightly noted, “in the end, both Schlaud and Gil-pin point out that a class representative who wants to undermine the union is not likely to be a suitable representative for a group that includes people who have no such hostility.” Riffey v. Rauner, No. 10 CV 02477, 2016 WL 3165725, at *7 (N.D. Ill. June 7, 2016). As we noted earlier, the Union presented evidence showing that 65% of the potential class members who are still personal assistants have since voted to join SEIU. It also submitted numerous affidavits from would-be class members stating that they supported the union and the fees. This evidence supports the district court’s finding of a serious intra-class conflict of interest. According to the Objectors, there is no conflict of interest, and they are therefore adequate representatives because differ-enees in opinion about the Union have no bearing on the merits of the claim. For this, they cite Eighth Circuit precedent for the notion that “[t]he antagonism which will defeat the maintenance of a class action must relate to the subject matter in controversy, as when the representative’s claim conflicts with the economic interests of the class ..." Reynolds v. Nat’l Football League, 584 F.2d 280, 286 (8th Cir. 1978) (citation omitted). But in Reynolds, the Eighth Circuit was examining the alleged conflict between active and retired football players. It decided that the differences were insufficient to preclude class treatment where “all class members were interested in damages [but] only some were economically interested in future player movement restrictions.” Id. Here, however, differences in opinion regarding the Union and its activities go to the heart of both the question of consent to the fee collection and to the motivation to seek monetary damages against the Union. To this concern, the Objectors propose what they see as a simple solution: certify the class that they have proposed and allow members with competing interests (i.e., those who would have supported the Union willingly, or who have since become full Union members) to opt out of the action. The problem with this suggestion is that Rule 23(b)(3)’s opt-out provisions may operate as a safety valve only for an otherwise properly certified class. In other words, the opt-out procedures are no substitute for adherence to Rule 23; a class must meet Rule 23’s requirements before class members are allowed to opt out of the action. The plaintiffs’ suggestion attempts to foist the burden of fashioning an appropriate class on those who would be required to opt-out. This we eannot allow. It is worth noting, too, that the district court repeatedly invited the Objectors to suggest a more tailored class, but they let that opportunity pass. We therefore have no trouble finding that the district court did not abuse its discretion in finding that the proposed class representatives failed the adequacy requirement of Rule 23(a)(4). Even if the Objectors had not run into problems with adequacy of representation under Rule 23(a), they would still not clear the class certification hurdles. Because they seek to certify a class for monetary damages, they need to show that the common questions predominate over questions affecting individual members, and that a class action is a superior method to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3). The predominance requirement is met when common questions represent a significant aspect of a case and can be resolved for all members of the class in a single adjudication. Costello v. BeavEx, Inc., 810 F.3d 1045, 1059 [7th Cir. 2016). As we said in Messner v. Northshore Univ. HealthSystem, 669 F.3d 802 (7th Cir. 2012): If, to make, a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Id. at 815 (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005)). This' does, not mean that a hint of an individual question—especially questions regarding damages—is fatal to class treatment, but common questions must predominate. Id. A district court should review the evidence pragmatically in order to decide whether class-wide resolution “would substantially advance the case.” Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 761 (7th Cir. 2014). The district court reasoned that the main issue remaining—compensatory damages—could not be resolved in a- single adjudication, and that the individual questions for the over 80,000 potential class members would predominate over- other questions. It acknowledged that this might not be the issue “if a class were certified solely to adjudicate the affirmative defense of good faith before determining liability,” but the Objectors did not request such a limited class nor did they brief that possibility. Riffey, 2016 WL 3165725, at *8. As the district court noted, the Supreme Court has resolved the overarching common issue in this case: whether the First Amendment prohibits the fair-share fee deductions in the absence of affirmative consent (yes). The issue that remains— compensatory damages—requires a showing of actual injury caused by the constitutional deprivation. Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). In order to recover damages for any monetary loss or emotional suffering, each class member must have suffered a loss, and that loss must have been caused by the Union’s violation of her First Amendment rights, We agree with the district court that the question whether damages are owed for many, if not most, of the proposed class members "can be resolved only after a highly individualized' inquiry. It would require exploration of not only each person’s support (or lack thereof) for the Union, but also to what - extent the- non-supporters were actually injured. The Union would be entitled to litigate- individual defenses against each member. This suggests not only that individual questions predominate at this stage of the litigation, but also that it would be difficult to manage the litigation as a class. The plaintiffs offered no plan to make class-wide determinations about support for the collective bargaining representation. The district court was well within the bounds of its discretion to reject class treatment on these bases as well. Our review of both the facts and the legal arguments the - Objectors have presented leaves us satisfied that the district court’s decision not to certify their proposed class'was a sound one. We therefore Affiem the judgment.