In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-3487

THERESA RIFFEY, *et al.*,

*Plaintiffs-Appellants*,

*v.*

BRUCE V. RAUNER, in his official capacity as Governor of the State of Illinois, and SEIU HEALTHCARE ILLINOIS & INDIANA,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
On Remand from the Supreme Court of the United States.
No. 10 C 2477 – **Manish S. Shah**, *Judge*

---

SUBMITTED JULY 30, 2018 — DECIDED DATE DECEMBER 6, 2018

---

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. When this case was last before our court, we upheld the district court's decision declining to certify a class of home health care assistants ("the Assistants") who were seeking a refund of the fair-share fees they had paid to a union for collective-bargaining representation. We agreed with the putative class that no one could be compelled to pay

fair-share fees, pursuant to the Supreme Court's decision in
*Harris v. Quinn*, 134 S. Ct. 2618 (2014), and that any such ob-
jector would be entitled to have his or her payments refunded.
The only question on the table was whether, with that com-
mon issue resolved, the district court abused its discretion
when it determined that for purposes of Federal Rule of Civil
Procedure 23(b)(3), issues common to the class would not pre-
dominate over individual issues and a class action would not
be a superior vehicle for resolving the claims. Any person
who wished to pursue an individual claim for a refund re-
mained free to do so.

Seeking review of our decision, the putative class repre-
sentatives filed a petition for a writ of certiorari in the Su-
preme Court. On June 28, 2018, the Court granted that peti-
tion and remanded the case to this court for further consider-
ation in light of *Janus v. State, County, and Municipal Employees*,
138 S. Ct. 2448 (2018). See 138 S. Ct. 2708 (2018) (remand or-
der). In accordance with Circuit Rule 54, we invited and have
received statements from the Assistants and from one of the
appellees, SEIU Healthcare Illinois & Indiana, discussing the
proper course for us now to take. Governor Rauner elected
not to file a statement.

We conclude that *Janus* does not require a different result
on the narrow question presented in our appeal, namely,
whether the class-action device is the proper one for the As-
sistants to use in seeking refunds of fair-share fees. We there-
fore once again affirm the decision of the district court declin-
ing to certify the requested class.

## I

A brief review of the history of this lengthy litigation will set the stage for our discussion of *Janus*. Around 2008, a majority of the Assistants in the state's Rehabilitation Program voted to designate SEIU as their collective bargaining representative; those who did not wish to be Union members were entitled to pay a "fair share" or "agency" fee—that is, a reduced payment to the Union that represents only the costs of collective bargaining, grievance processing, and the like, and excludes political activities with which the person may not agree. In 2009, Governor Pat Quinn of Illinois issued an executive order directing the state to recognize an exclusive bargaining representative for assistants in the state's Disabilities Program, if a majority of those assistants voted in favor of a union. A mail-ballot election ensued, in which a majority of the Disabilities assistants voting rejected representation by either SEIU Local 713 or by its rival, AFSCME Council 31. *Harris v. Quinn*, 656 F.3d 692, 695 (7th Cir. 2011). This action against the Governor and the Unions followed: the Rehabilitation Assistants argued that the fair-share fees violated their First Amendment rights, and the Disabilities Assistants (who were not yet subject either to a union or fees) lodged a facial challenge against the law. The district court dismissed both groups' claims: it held that the Rehabilitation Assistants had failed to state a claim on which relief could be granted, and that the Disabilities Assistants' claims were not ripe. We affirmed, clarifying that the dismissal of the Disabilities Assistants' claims had to be without prejudice. *Id.* at 701.

Our opinion, however, was not the last word on the matter. The Supreme Court granted certiorari and reversed with respect to the Rehabilitation Assistants' claims. It held that the

First Amendment does not permit a state "to compel personal care providers to subsidize speech on matters of public concern by a union that they do not wish to join or support." *Harris,* 134 S. Ct. at 2623. The *Harris* decision sharply questioned the continuing vitality of the Supreme Court's ruling in *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), but the Court did not feel compelled at that juncture formally to overrule *Abood.* Instead, it held that the Assistants were not state workers at all and thus the state could not compel them to pay even a fair-share (or agency) fee. 134 S. Ct. at 2639–41, 2644. Upon receiving the Court's mandate to this effect, we remanded the case to the district court for further proceedings in accordance with the Supreme Court's decision.

On remand, the Assistants amended their complaint to substitute new named plaintiffs for the class, and to substitute Governor Bruce V. Rauner for his predecessor, Governor Quinn. They sought certification of a class of "all non-union member assistants from whom fair-share fees were collected from April 2008 until June 30, 2014 (the date of the Supreme Court's *Harris* decision), when the state stopped the fair-share deductions." *Riffey v. Rauner*, 873 F.3d 558, 561 (7th Cir. 2017). The proposed class included some 80,000 members; the class representatives asserted that the total amount that needed to be refunded was approximately $32 million. *Id.*

As we explained in our 2017 opinion, the district court denied certification for several reasons:

> [T]he class definition was overly broad in light
> of evidence (detailed by the court) that a sub-
> stantial number of class members did not object
> to the fee and could not have suffered an injury;
> the named plaintiffs were not adequate

> representatives; individual questions regarding damages predominated over common ones; the class faced serious manageability issues; and a class action was not a superior method of resolving the issue.

*Id.* Although there once had been a class-wide question whether the fair-share fees were compatible with the First Amendment, that question had been resolved definitively by the Supreme Court's *Harris* decision. Left with only the more individualized issues, all three members of the panel agreed that the proposed class failed to meet the requirements under Rule 23(b)(3) that issues common to the class would predominate and that a class action be a superior mechanism for resolving the dispute. *Id.* at 565–66 (majority); *id.* at 566–67 (concurrence).

That was the posture of the case at the time the Assistants filed their petition for certiorari. The Supreme Court held the *Riffey* petition in abeyance while it decided *Janus*, and then, as we noted earlier, it returned *Riffey* to this court for further consideration in light of *Janus*.

## II

*Janus* was an individual action brought by Mark Janus, an employee of the Illinois Department of Healthcare and Family Services. Unlike the assistants in the *Harris* litigation, Janus was indisputably a state employee. The people in his unit were represented by the American Federation of State, County, and Municipal Employees (AFSCME) Council 31, but Janus elected not to join the Union because he disagreed with its positions on a variety of public policy matters. Although he was required to pay only a fair-share fee, he objected to

that as a matter of principle. His fees amounted to about $535 a year.

Two important facts distinguish *Janus* from *Harris*: first, in *Janus* there was no way to avoid confronting the continuing validity of *Abood*, because Janus was a state employee; and second, Janus did not seek to represent a class. With respect to the first point, the Court concluded that the time had come to overrule *Abood*. 138 S. Ct. at 2460. The entire majority opinion is devoted to the explanation for the decision that "public-sector agency-shop agreements violate the First Amendment." *Id.* at 2478. In light of that ruling, the Court said, "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id.* at 2486.

The Court recognized that its holding would have a significant impact on public-sector unions over the short run. *Id.* at 2485–86. And that is undoubtedly true. But the parties involved in *Harris*—who are identical to the group that Riffey seeks to represent—had *already* persuaded the Court to outlaw their agency fees. *Janus* simply did not affect whatever remaining claims the putative class members in *this* litigation might have. The Court's language in *Harris* is unambiguous: "The First Amendment prohibits the collection of an agency fee from personal assistants in the Rehabilitation Program who do not want to join or support the union." 134 S. Ct. at 2644. We followed that rule to the letter in our decision on remand from *Harris*, where we wrote that "the Supreme Court has resolved the overarching common issue in this case: whether the First Amendment prohibits the fair-share fee deductions in the absence of affirmative consent (yes)." 873 F.3d at 566.

The Court's resolution of the agency-fee issue meant that only one further point needed to be resolved on the *Harris* remand: whether the remaining issues concerning refunds of agency fees that were paid by nonconsenting employees could be resolved in a class action. If this was to be a class at all, we recognized, it was one for money damages for each individual class member, and it would accordingly have to satisfy the requirements of Rule 23(b)(3). See *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–67 (2011). (Any proposed class would also have to satisfy the requirements of Rule 23(a), which we discussed in our earlier *Riffey* opinion. We have no need to reach the Rule 23(a) factors, however, if Rule 23(b)(3)'s criteria are not met.)

Although Rule 23(b)(3)'s language is familiar, we set it forth here for convenience:

> (b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> \*\*\*
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

The decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome. As we noted in *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008), "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate," and thus "this court reviews such decisions deferentially." *Id.* at 794 (internal quotation marks omitted). We see nothing approaching an abuse of discretion in the district court's decisions here that whatever common questions remain among the proposed class members do not predominate, and that "a class action is [not] superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

We set forth many of the district court's reasons for coming to this conclusion in our 2017 decision in this case. We reproduce that analysis for ease of reference:

We agree with the district court that the question whether damages are owed for many, if not most, of the proposed class members can be

resolved only after a highly individualized inquiry. It would require exploration of not only each person's support (or lack thereof) for the Union, but also to what extent the non-supporters were actually injured. The Union would be entitled to litigate individual defenses against each member. This suggests not only that individual questions predominate at this stage of the litigation, but also that it would be difficult to manage the litigation as a class. The plaintiffs offered no plan to make class-wide determinations about support for the collective bargaining representation. The district court was well within the bounds of its discretion to reject class treatment on these bases as well.

873 F.3d at 566. And this is not all that supports the district court's determination. The Union presented evidence of disharmony within the class: some of the Assistants supported the Union and have no desire to collect a refund, while others are eager to get their money back; and once they no longer had the intermediate option of paying an agency fee, some moved in one direction to join the Union, while others moved in the opposite direction and severed all ties with the Union. The court also noted that the answer to the central question that remains—how much money each individual class member is entitled to recoup—is particularly ill-suited for class treatment, because it depends on a myriad of factors particular to each individual worker.

Last, the district court made it clear that it was not averse to considering a more targeted class. It denied the Assistants' class certification motion without prejudice to a revised class

definition. It also left the door open to a potential class for injunctive relief, even though such relief is hard to envision after the two definitive Supreme Court decisions. And the named plaintiffs stipulated to a final judgment that granted them all the individual monetary relief they were seeking and permanently enjoined the state and the Union from applying any fair-share or agency-fee requirement to personal assistants. The latter is precisely the relief that *Janus* contemplated.

Despite this apparent success, the Assistants spurned the opportunity to suggest a narrower class in favor of a "go-for-broke" strategy. In doing so, however, they overlooked the substantial deference we give to the district court's decisions about predominance and manageability. The judge here came to a defensible—indeed, sensible—decision on these points. Nothing in *Janus* speaks to the suitability of class treatment of these issues under the unusual circumstances of this case, which already had been decided under *Harris*, which for these parties established a rule practically identical to that in *Janus*.

### III

We therefore conclude, as we did before, that the district court acted well within its authority when it declined to certify a class action for the clean-up proceedings that are necessary in the wake of *Harris* and *Janus*. Individual assistants who wish to pursue refunds are free to seek to do so; we make no comment on such cases or the defenses the Union may endeavor to raise in them. The decision of the district court is AFFIRMED.

MANION, *Circuit Judge*, concurring in the judgment. I write separately to emphasize that a union's expropriation of fees from a non-member without his or her consent amounts to a First Amendment injury on that basis alone, regardless of whether the employee subjectively opposed the fees.

As the court rightly states, *Janus v. State, County, and Municipal Employees*, 138 S. Ct. 2448 (2018), does not affect the narrow grounds on which I agreed with the court's previous judgment affirming the district court's denial of class certification. Those grounds were that the plaintiffs failed to show common issues would predominate over individual questions, or that a class action would be superior to individual litigation. *Riffey v. Rauner*, 873 F.3d 558, 569 (7th Cir. 2017) (Manion, J., concurring), *vacated and remanded for further consideration*, 138 S. Ct. 2708 (2018); Fed. R. Civ. P. 23(b)(3).

Nevertheless, I continue to disagree with two of the district court's other bases for denying certification. First, the district court concluded that not all the potential class members suffered a First Amendment injury when their money was seized without their affirmative consent, because some might not have been opposed to the fair-share fees. But silence, in this context, is not golden. The injury occurs in extracting fees without first obtaining affirmative consent. *C.f. Janus*, 138 S. Ct. at 2486 (holding that waiver of the First Amendment rights at stake when a state or union extracts agency fees from non-member employees "cannot be presumed," and such waiver is not effective "[u]nless employees clearly and affirmatively consent *before* any money is taken from them") (emphasis added). Thus, this injury is suffered regardless of whether the non-member employee opposed supporting the union

through fair-share fees, so long as he or she had no opportunity to express consent to such fees.

Second, the district court concluded that the named plaintiffs were not adequate representatives because there exists disharmony within the proposed class due to potentially differing views in support of or opposition to the union. Any such disharmony, however, does not defeat the maintenance of a class because it does not affect the matter in controversy: the extraction of fair-share fees without affirmative consent. A potential plaintiff's support of, indifference to, or hostility toward the union has no bearing on his or her entitlement to a refund of money taken without affirmative consent.

For these reasons and the reasons stated in my original concurrence, I believe the district court was incorrect in reaching its conclusions on these two issues. *See Riffey*, 873 F.3d at 566–70 (Manion, J., concurring).